We'll turn to our next case, United States v. Parrish. The government stated that at the sentencing. What is odd about this is what the government did write and what it argued at the sentencing was, to the extent that the court is inclined to give Parrish credit, it should give him 211 months after such credit is given. That is really playing fast and loose with what is the essential bargain. We tend to think of time served being credit for a person who has already been incarcerated for 31 months. Did the government agree to recommend a lower amount with you? No. The government agreed not to oppose the request for the 31 months. Right. But essentially to say to a defendant, we'll agree to it as a departure. We won't oppose it, to be using the exact language, as a departure. But judge, if you give that, you really should undo it by 31 months. The ultimate sentence your honor should give is really dependent on whether you have given that departure that we agreed to. And that is a very, very odd way. It's really, in essence, bad faith because Mr. Parrish understood fundamentally that he would get 31 month credit. The government was not going to go into court and say, you know, judge, don't give it to him. But to say to the judge, you can give it to him, but if you're going to give it to him, you should just come up by that exact same amount of 31 months to essentially deprive him. The government was free under the plea agreement to ask for even a higher sentence. Yes, it was, your honor. The government retained absolute freedom, as did you, to ask for a sentence outside any sentence considered pursuant to the 3553A factors. Correct. If the government had come in and not mentioned that and said, your honors, we don't oppose that at all. But we think this guy is a bad guy, given whatever it was. The plea agreement also said we agree he should get the 31 months. It hadn't been calculated at that time, but there's a paragraph that says he should get the time credited that he served, I think it was an assault conviction in New York, right? Yes. That's even on the table at the time where the government is saying, you know, we agree he should get credit for that and get a departure downward for that, but as Judge LaValle points out, it also contained this language about, but the government is free to ask for an upward departure or a variance, right? The government was entitled to ask for a variance. These agreements, I think now in the southern district policy, have allowed both sides to ask for variances. And it's one thing to ask for a variance, but it's another thing to say to the judge, we're going to ask for a variance for 31 months to the extent that the court has granted it. So what they're saying is if the court doesn't grant the departure, we don't ask you for the 31 months. Another way of saying that is this defendant has done such bad stuff that we don't think an appropriate sentence would be any less than having him serve so much time, as a minimum, so much time from counting from now. I guess it's the counting from now part. We tend to think of credits for time served to be taken away from the ultimate sentence. So if someone says he gets 10 years and he's been in for 3, we tend to expect that means he'll do 7 years. Is there a hyper-technical way to read this agreement to say otherwise? I suppose so. But to condition the ultimate sentence on whether or not the judge has granted that 31 months is a violation, I think, not only of the spirit, but also the letter of the agreement. Judge LaValle, as you said in the last argument, I believe, this is justice, not a commercial contract. Laquan Parrish had a basic understanding. This is a difficult area. You said at the sentencing you didn't think it was a breach of the agreement. You said I don't want to shake my hands around and yell breach, but I think it comes close to that. You didn't say, Your Honor, this is a breach of the plea agreement. I believe after I did preserve the issue. The government does not argue that I did not preserve. I'm not saying you didn't preserve the issue, but I'm just saying what was your position? Maybe I was being too deferential to the government and expecting that, you know, we're not going to throw around terms like breach and bad faith willy-nilly. I have tremendous respect for the Southern District, but it was, I believe, far beyond them to. Were you ever misled by them as to whether they would recommend the 211? I thought the 211 was straight, was common knowledge all the way through. Well, they actually. That they were going to recommend. They recommended 242 minus the 31. Well, but then they came down, right? No, they recommended 242 if the court was going to grant the 31-month departure. I thought that if they weren't going to grant the departure. So then they came down to 211, right? If the court were to grant the departure, then they should come out at 211 months. Right. That is correct. Was I misled? Yes. When the judge, Magistrate Judge Lee Forrest, asked us, I'm not sure if I read the name right, when the magistrate judge asked us at the plea, is there anything you want to highlight? The answer was yes. I want to make it extra clear so that Laquan Parish understands that he is going to get credit for that 31 months, not that the government will technically not oppose that 31 months, but then if the court is going to give it to him, recommend to the judge to vary upward by 31 months so that he doesn't get credit for it. Now, it's very difficult in this day and age to explain to a defendant what is the statutory guideline or the statutory basis for sentencing, the guidelines, what they mean nowadays, and Booker, and then what a variance is. This is very complicated. So from a defendant's reasonable understanding of the plea agreement, he reasonably understood he would get the 31 months, they're not going to fight him on that, and they're not going to play tricks to say, okay, we got you. We got you. We didn't oppose the 31 months, but we're going to ask the judge to do it as a Booker variance. The reality is I could ask for a Booker variance without anything in the plea agreement that talks about a departure. We all know that. Does it matter that he got 195 months, though? Well, The district court thought about all this and said, I think 195 is the right number, not 211. Absolutely. First of all, it's interesting. It sort of splits the difference, right? There's 31 months. It gives him 15 months, essentially half. And what this court's law says is actually quite good on this for the defendants, which is you can't unbring that bell. Once the government asks for that, if it breaches, if this court finds a breach, the judge has heard it. The judge has heard that sentencing recommendation. And even if the judge disavows reliance on it, this court's law is that the breach has occurred and that remand to a different judge is the remedy. Thank you, Your Honor. We've got a couple minutes for rebuttal. Thank you. We'll hear from the government. Good morning, Your Honors, and may it please the Court. My name is Hagen Scotton. I represent an assistant United States attorney in the Southern District of New York, and I represent the government here. I was one of the assistants in the district court as well. This appeal should be dismissed. The defendant entered a waiver of his appellate rights if he was sentenced to 211 months or less. He was, in fact, sentenced to 195 months, and therefore the appellate waiver has force. The government complied with its obligations under the plea agreement, which pertain to the guidelines range in effect. The plea agreement contains a great number of provisions stipulating the appropriate guidelines, one of which was an obligation not to object should the defendant move for a downward departure. And we complied with all of those. As Judge LaValle indicated in his question, the plea agreement was also incredibly clear that the government could request any sentence, inside or outside the guidelines, as could the defendant, a provision that both parties took advantage of. Here, the government requested 211 months. It did not request 211 months in a conditional or contingent manner. You can look quite clearly at the government's brief, page 91, which I know the Court is aware of, which says please sentence the defendant to 211 months. There was no please give him this or that depending on what you do with the guidelines. The government's position was simply that 211 months was appropriate, period. And there's nothing in the plea agreement that says the government cannot do that. Because the government complied with its obligations under the plea agreement and sought a sentence it was allowed to seek, furthermore, that was expressly contemplated in the plea agreement, there was no breach and the appellate waiver remains in effect. Subject to the Court's questions. Well, I've got a question. I remember I was just looking in the sentencing transcript. I remember the district court had some concern about this and said, well, we'll wait to see what the Second Circuit has to say about it, right? So even the district court was a little uncomfortable with the math here, is that you take 31 from 211, you hit 180, which is the top of the guideline range. So, you know, it looked a little bit like they were asking to negate the 31 months, right? So I think, I guess, two responses to that. First, Your Honor. I don't think you were at the sentencing, right? I was not at the sentencing, Your Honor. You're correct. The district court, however, was, and in the end, having been through the whole sentence, the district court said there was no breach here. He was asked about it. He said, I've looked at the arguments. I think he was very clear. He understood Mr. Marmer's argument. It has a superficial appeal based on the numbers. But then he said, I think the plea agreement permitted the government to do what it did here. I understand that they were not seeking to do an end run around the plea agreement, but rather seeking the sentence that they felt was just. The sentence, I think, again, Judge LaValle put it well, that our assessment was based on all the facts in this case. The defendant should serve 211 months in prison. We made that without reference to the guidelines. So I think, although the district court understood the appellant's argument, if this court goes with the district court's understanding, there was no breach here. You agree that the law here, though, is that you can invalidate a plea agreement either through bad faith by the prosecutor or by a breach of the plea agreement. You don't need both, right? I have not seen that in the law, Your Honor. I would say it's through a breach. Acting in bad faith can often breach a plea agreement. There wasn't a breach of the plea agreement, but was there bad faith? There was not bad faith, Your Honor. I think the plea agreement, which is the best evidence of the promises we made, and here, in fact, the only evidence because it contains an integration clause, and the defendant was asked if there were any promises outside the plea agreement to which he said no, the plea agreement very clearly contemplates a 211-1 sentence. There was nothing that should have been surprising to the defendant. There was no bad faith because the government was not interested in undoing any particular provision of the plea agreement. I understand Mr. Marmer says, you know, I won this concession. I wish it had had more effect. But simply asking for an ultimate sentence is not bad faith with respect to the guidelines stipulation. I think, I guess the best example I could give, Mr. Marmer stipulated to a four-level increase to his defendant's offense level under the guidelines because he was the leader of this large and violent gang. He then went on to argue for a below-guideline sentence. He was, in effect, asking the district court not to give full force to that concession. Had the district court gone his way, the sentence would have been less than the guidelines he stipulated to, and that particular provision would not have been given its full effect. But he wasn't acting in bad faith because he was — But what's your point? There's another provision in the plea agreement that says both sides can argue for a variance or a departure. That is exactly my point, Your Honor. Because the plea agreement in the end allowed any party to seek any sentence that was appropriate, there's nothing bad faith about seeking any particular provision. It allows both parties to agree on the guidelines, take that off the table, and then move on and make their points about the appropriate sentence. And that's what the government did here. And that's how Judge Kaplan understood it. He realized that the government was just seeking the sentence it thought was appropriate. And to be clear, we didn't say, Judge, give him 242 if you do X with the guidelines, give him 180 if you do X with the guidelines. Judge Kaplan wanted to explore what sort of variance the government's request looked like relative to the guidelines. But the government's request was never contingent upon any particular guidelines calculation. The government's request was just this is the just sentence under the 3553A factors. And that is exactly what the agreement... 211. 211, yes, Your Honor. That's the only figure you ever talked about. That is the only figure that we submitted to the court. Now, Your Honor, the court, the district court, wanted to do a bunch of permutations of the guidelines to see how the various calculations played out. And we certainly participated in that. But the figure we told the district court is give him 211. We never said give him 242 in different circumstances or 180 in different circumstances. We said this is the sentence we felt was just. Thank you. Mr. Marmor, you've got a couple of minutes. Yeah, I have, I think, three points to make. First is the government said that it was not conditional and it didn't refer to the guidelines in terms of what their request was. But, again, I refer to the footnote on page 91, which says, to the extent that the court is inclined to give Parrish credit for the time spent in jail in relevant conduct pursuant to 5K2.23, that is both conditional and does refer to the guidelines. The second point is the court imposed a sentence of 211 months after such credit is given. So that Parrish's actual sentence is 211 months. Now, if we turn to page 121 of the guidelines, where the government said we never made a request for 242 months, it says, and I'm reading from the middle of the page, Mr. Marmor, meaning in their view it's 212 to 242. Ms. Feinstein, I agree with counsel. So what they're saying is 211 months if you give the credit, I'm sorry, 242 months and then take the credit, or if you don't give the credit, then 211 months. That is the very problem here, is that it was a conditional request. Now, the government also said, you know, it's like a defendant who asks for a variance based on there's an aggravating role that has enhancement of four points. But it's one thing to say, Judge, you may have had an aggravating role in this offense, but overall he should get a variance downward. But if I came into court and said, Judge, I've agreed to that, but I don't believe the facts justify that, or you should undo that specific enhancement before you impose sentence, that would be a very different thing. I think the government would jump up and down and say, Mr. Marmer is breaching the plea agreement. And for them to say, in essence, we don't oppose, but if you give it, you should undo it. We're lawyers. Maybe we can understand that distinction. It's a fine distinction. But I've got a client here who's trying to understand very basically what he's getting out of this plea, and he should expect that if the court gives him the 31 months, the government's not going to come in later and say, okay, but undo it. How many, again, the pages you were referring to? I believe it was 91 and 121, Your Honor. Thank you, Mr. Marmer.